oral argument at 3.15 minutes to try. Judge Elfin, please come to the podium. Thank you, Your Honor. I'm supposed to remember that I want to reserve four minutes for rebuttal. Good morning, Judge Clay, Judge Stranch, Judge Black. My name is Bruce Elfin and I'm here on behalf of Marie Weaver. Marie Weaver is the non-movement in this case. And this court and the court below are bound by the evidence favoring Marie Weaver's summary judgment. The court below looked at the evidence backwards. It decided what it would like, what the story of the defendants was, credited that story, and then made statements flat out that ultimately are wrong about the issues in this case. We believe that he construed the evidence in favor of the defendant and that he ignored, what he ignored was that he was to reject the evidence that must be rejected in summary judgment consistent with the Reeves case. Marie Weaver was the clerk of counsel for the City of Twinsburg. She became the clerk in March 2008. One of the things in this review that we think is critical is that the court below equated statements of I don't remember, I don't recall with proof that either something did or did not happen. We believe that this case also is an example of what Judge Moore wrote about in Thrash v. Miami University in Dissent, where the district courts use summary judgment too freely, especially in employment cases. We think this is true especially where the proper interpretation summary judgment must be balanced to effectuate the Seventh Amendment and not to undermine the right to trial by jury. First retaliation, there's two retaliation claims in this case. The first one is from November 18th of 2008. Marie Weaver? How do you consider the fact that Ms. Weaver was hired at the end of 2006 as a deputy, that at the beginning of 2008 she was promoted to acting clerk and in March of 2008 she was given the position? Since we're talking about an immutable characteristic claim of discrimination, how do you account for those promotions and hiring? Well we're here not on the underlying claim of racial discrimination. Her claim that she raised to the city in November of 2008 was that she believed she was being treated differently in how she was able to act as the clerk of council because of her race. Her attorney wrote a letter to the mayor that was delivered the morning of November 18th. She got her first discipline the evening of November 18th. That same letter was sent to the council. I have a question on that. Looking at the record, I see that an email was sent to the mayor and it said in there that courtesy copies were provided to the council. Can you appoint me to a document in the record that shows that that was actually emailed to the rest of the council? Your Honor, I'd like to tell you that I'm an ultimate technophobe. I'm not quite there yet, but it's my understanding it was sent electronically to the council members as well. Her council sent it, so if it was sent and the email is in the record, then we should have an email that shows sending as a copy to all of the council members. Have I missed that? Your Honor, I don't believe so. It's my understanding if you look at 3614 in the docket record, that is the letter from Barbara Besser that was sent to the mayor. The mayor acknowledged that she had it before the meeting on the 18th. Therefore, Twinsburg certainly had knowledge of it. I cannot verify from the testimony whether each councilman received it on that same day. Can you verify from the documents that each council were actually emailed it? I know that they were emailed or sent the document. Some of them, I don't know if we had ever emailed that day. So it could have been sent by mail? Some of them may have been forwarded by mail and they may not have gotten them for a day or two. Okay, thank you. The retaliation, though, is that as soon as her complaint in writing was received, where she complained about racial discrimination, which the mayor admitted to getting, I think a fair inference in favor of Marie Weaver is that they dredged up events from late July and considered them for discipline. They added accusations by the mayor from the middle of the month. We're going to send you for a pre-disciplinary hearing. I think as this court has acknowledged in the Schaefer case, Judge Clay, when you wrote about the fact that, well actually it's the Laster case. In Laster, you only have to have something that materially affects the employment. It doesn't have to be straight adverse. And here she was given the choice of an EAP or two-day suspension. I think consistent with Laster, it meets that standard as being materially adverse. She filed formal charges of racial discrimination in retaliation for what happened arising out of the November 18th actions. Those were filed February 24th of 2009. Two Twinsburg officials acknowledged receiving those charges of discrimination on or about, at least at the latest, March 6th. They also acknowledged that on March 6th, within 24 hours of receiving it, the instructed Marie Weaver to add to the next scheduled council meeting that was to be four days later, the following agenda item, to discuss pending or imminent litigation. On March 9th, the day before the meeting, Twinsburg ran a search using Weaver as the search term for the first time on March 9th. That then was used, along with a printout of some of the emails, as the justification at the meeting for her termination. We believe that that shows a significant temporal nexus between the events and the termination. Charges received the 6th, search was done the 9th, letters of termination drafted on the 10th, termination decided the evening of the 10th, and Marie Weaver looks at it and says, what changed during that short period of time except for my charges? The city likes to say, oh, we were looking at her. Well, they cited and said, oh, we did a search on the 3rd. Well, the search on the 3rd was about Sally Gaydosh, who was a resident of the city of Twinsburg that they had disputes with, and who had routinely been a thorn in their side. So they searched for Gaydosh, not searched for Marie Weaver. She was not the subject of that, and therefore I think that undermines the city's position because they said one thing, and the documents are contrary. The other criticism of Marie Weaver as to what she disclosed or what she did came out from her deposition 39 months later. The court also allowed an unarticulated, what I call an honest belief defense that they briefed in opposition here. It's raised by Twinsburg, and on the face of it, it's interesting because none of the decision makers actually reviewed the materials that Twinsburg claims supports their termination and honest belief defense. As Judge Clay said in Shazer, you cannot raise an honest belief defense and not review the underlying documents or not look at the information. And so I think that, at least at summary judgment, whether they could argue it to a jury is one thing, but at summary judgment, it's inappropriate. Twinsburg acted to discipline immediately when they got the first notice. They acted within days to terminate her. There's material facts, three of them that I think are important. On the license fee ordinance issue, Twinsburg claims there were no meetings between the rejection by the state and the discipline they imposed. Marie Weaver offered facts that there were seven meetings between July 29th and November 18th, and no discipline was imposed before they got notice of her complaints. The court says she didn't put anything in the record to show that there was conflicts between the shifting positions of the city. City terminated her on the 10th, announced to the world, and put in the paper, we did it because of her performance over the last year. Yet for the first six months of that year, she was rated effective and highly effective on how she carried out her duties as the clerk for the first six months. They then, three and a half months later, when they responded to the EEOC on the investigation, they responded and said, oh, it's due to her assisting GADOSH with documents for the first time. We believe that, you look at this temporal connection, I've gone through those events, it took less than one week after getting the charge. Also here, one of the things the judge didn't even mention, it took no consideration of the fact that EEOC investigated her charge of racial discrimination and both charges of retaliation. In an unusually, since they returned reasonable cause findings on both retaliation charges. We believe that's significant because EEOC finds reasonable cause and I'd like the court to take judicial notice of the EEOC statistics that they find reasonable cause less than five percent of the time. Here, Marie Weaver had two reasonable cause findings in her favor, yet the court doesn't even comment on it. The court doesn't consider it and the court gave them no weight. I think it's summary judgment, where they are factually relevant to the issue to be determined. I think it mitigates against summary judgment unless there's some flaw that the court finds. Help me on one factual issue. The seven meetings that were between the July time frame and the November time frame, can you tell me how many were between the July time frame and the October claim of insubordination? The October claim of insubordination arose on October 18th. Right, but how many? There was only one meeting after October 18th, so there were six. So there were six before? There were six before October 18th, one on October 28th, and then the next one November 18th. We believe that the evidence here supports an inference that Marie Weaver should get a trial. We also think that here, if Twinsburg disputes the reasons advanced and her charges as being responsible for the adverse actions, I think that is a disputed fact and I think Judge Adams should not have decided this. And that under Reeves, this is a jury issue. One thing, November 18th, when they had executive session, they called it for personnel matters. I'm sorry, Your Honor, I'm running out of time. I could go further. I don't want to use your rebuttal time. Your Honor, I think I want to save that. All right. Thank you, Judge. Good morning. May it please the court, my name is Cynthia Twinsburg, arguing in favor of the district court's grant of summary judgment. The facts in this case demonstrate that plaintiff cost the city $86,000, was disrespectful and insubordinate to the mayor. Now those facts were confirmed by an independent, neutral third party. How do you explain the favorable employee evaluation? It's actually, if you read the five instances of needs improvement, all dealing with interpersonal skills, and one area of must improve. So the evaluation did not lead to a termination, but there are clear areas where Ms. Weaver was instructed to improve. And then the must improve would have had to been followed up at the next evaluation. And with specific references to these problems? With the problems that are... The problems dealing with the insubordination, yes. I'm not certain about the filing, ma'am. I don't know if it was mentioned specifically. It's a circle one through five, and then needs improvement, must improve satisfactory. I don't know if it's on the form itself regarding the filing fee, or the filing year. After independent confirmation of the missed filing and the insubordination, the recommendation was made by the neutral for one of two things, employee assistance or suspension. After consultation with her attorney, Ms. Weaver chose the suspension. That's the first claim of retaliation has to do with her termination. And the facts there show that plaintiff was terminated for not performing her job. Why was she not performing her job? She was voluntarily providing confidential documents to a known litigant against the city. Looking at these facts, Judge Adams determined that Ms. Weaver did not meet her prima facie burden. But he didn't stop there. Instead, he took the next step. And he said, let's just assume she has. Let's assume there is a temporal proximity. Let's assume that's enough. Even if we get her past that hurdle, she still fails to demonstrate that the city's proffered reasons, for purposes of the suspension, the missed filing and the insubordination, and then for purposes of termination, these emails. Even assuming that plaintiff has proceeded to pass the prima facie hurdle, she still hasn't proved that the city's reasons were discriminatory. And for that reason, he granted summary judgment. And there's some discussion of the facts. I think this is true with most employment cases. You'll see us up here today arguing about the facts, but not really the law is. This court's had a lot to say about temporal proximity of late, and we're not up here denying what the court has said. We're saying, fine, assume there's a temporal proximity. Even though we don't think the facts play out, let's just assume for purposes of argument there is. We still have legitimate, non-discriminatory reasons for supporting our actions. And for that reason, Judge Adams correctly concluded that this is a summary judgment case. Let me ask you this. What is the earliest date that either the mayor or members of the council or any city employees, such as the law director or the HR director, learned that Ms. Weaver had contacted the EEOC? Did you say the earliest date, sir? Yes. Are we talking about the suspension or the termination? Well, actually, well either. What's the earliest date she had contacted the EEOC regarding a racial discrimination claim for any purposes? The earliest that the city would have received information was the email that was discussed in 2008. Now, council members did not receive that email. Well, was that the earliest date that any of the city people, the mayor, the city council, or the law director knew about the fact that she had gone to the EEOC? Yes, sir. That's the very first date. Okay. Prior to that date, we have the misfiling deadline. We have the insubordination with the mayor. We have the decision on November 14th to discuss these matters at council. So the decision's already been made that we need to discuss these issues. That's done on the 14th. We believe, I shouldn't say that, her first contact with the EEOC was November 15th, the next day. November 18th, there's an email that goes to the mayor, no one else. The mayor does not share that email with council members. Did the mayor attend that meeting? There is a factual dispute as to whether or not she did. She does not recall. She recalls attending many of those meetings. She cannot recall if she attended that specific meeting. What is undisputed, however, is that the fact that this email was received, and that plaintiff did go to the EEOC, was never discussed at that meeting. And we have testimony from every council member present saying that was not addressed. It was not. Does any other council member say that she was present? There is a dispute there. One says she was, others say she was not, yet others say, don't recall. And now you're taking the position that the EEOC complaint was not put on the meeting agenda? No, sir. No, it wasn't? No, it was not put on the meeting agenda. We have following the question of the termination. That was the suspension, now we can talk about the termination for a moment. Is the EAP or suspension, is that an adverse employment action? I do not believe that the assistance referral was a negative employment action. We have case law in our brief to support that proposition. I will tell you it's not from this district. And it generally has to do with cases where there was not a punishment, right? It was where there might have been a group. Correct. But she her rationale was I don't need the assistance. She still disputes that her confrontation with the mayor was anything other than civil. We next have the termination. And I want to clear up some of the facts on that issue. The testimony is clear that in the spring of 2009, the law director learns that there some telephone conversation, some communication between Weaver and Ms. Gaydosh that sounded as if Weaver was offering to send over documents. That information is brought to the law director's attention. He decides to look into the matter. On March 3rd, he does so by running a search for the term Weaver. I'm sorry, excuse me, Gaydosh. That search turns up many, many, many emails between Ms. Weaver and Ms. Gaydosh. He then furthers the investigation. Over the weekend, he reads some of those initial emails. He realizes there's an issue. He decides at that point, I need to bring this to council's attention. On March 6th, he runs a second search. He wants to narrow down his results so he can present accurate information. He runs a search of both Weaver and Gaydosh together. He comes up with 120 emails exchanged between these two individuals. The emails, as he's printing them up, he realizes that this information from Weaver to Gaydosh is being provided voluntarily. There are no public records requests. He goes to the log. Weaver keeps a log of public records requests. He checks the emails against the log. They're not in there. Other public records requests show up in the log. These public requests do not. He also finds that legal opinions are being emailed to Ms. Gaydosh, evidence of a personal spat between members of the committee, the council members are being voluntarily emailed over. Let me ask you this. Were these emails put in the record or submitted to the district judge prior to the district judge ruling on the motion for summary judgment? Some of the emails, yes. All 120 emails, no. You will not find them all in the record. Portions of them are, yes. Portions of some of them is what you're saying? Certain specific emails. How many? I don't know the answer to that question. We also submitted certain specific emails to the EEOC during their investigation. Those emails are also in the record, but I will tell you all 120 are not. During deposition, Ms. Weaver testified that she without a public records request, they never would have become public knowledge absent her unilateral decision to release them. She was not submitting the request to the appropriate entities at the city, and she did not direct the request through the proper channels. And again, they were never entered into the log. For these reasons, council met. They listened to a presentation by the law director. They looked at the emails. There's testimony from one of the five council members saying, I did not read the specific emails. Everyone else testifies. We listened to the presentation. We looked through the records, and we unanimously voted to terminate. Those individuals had no appreciation for the fact the EEOC charge had been filed. They were not aware of that. That is their testimony. One member of the five testified at some point he learned of the EEOC charge during an executive session. He never says it was the executive session where we decided to terminate the plaintiff. Council members also said... He didn't remember which... that there is an EEOC charge filed. I would have found that objectionable. There's no evidence in the record that any actions were taken as a result of the EEOC contact. There's no evidence in the record that the EEOC contact had any bearing on the ultimate decisions. The evidence in the record also demonstrates that every single one of these prior to plaintiff's contact with the EEOC. For these reasons, Judge Adams correctly granted summary judgment, and we ask that this court affirm. Thank you for your time. Thank you. Interestingly, when it came to the ordinance and being registered with the state of Ohio, there was a dispute of fact as to who was responsible for sending it to the state. Some council members blamed it on the finance directors. Some people blamed it on Marie Weaver. Marie Weaver ultimately received some discipline for it. Didn't she say in her deposition that it was appropriate that she receive some discipline? Had she received that discipline shortly after they were notified that it wouldn't be of an effect for that year, she probably would have said, yes, I could have appropriately gotten some discipline. However, no discipline was given until the day her complaints about racial discrimination came to light. That's the problem. We have that nexus, and that's an issue of fact that a jury should decide. On the ratings. I hate to beat a dead horse here, but what's the evidence that it had come to light? What was before the district judge at the time of the ruling on the summary judgment that the city knew about the EEOC complaint or claim at the time that the suspension or termination decision was made? When the termination decision was made, in fact, the very person who made the presentation to city council, Mr. Maestros, admitted that he knew about the charges on March 6th. He requested that this executive session be added for pending and imminent litigation. So the very person who knew about the charges was the main actor in putting all this before the council, collecting everything. So you're saying that it was actually on the meeting agenda. Is that what you're saying? On March 6th, within 24 hours of getting the charges, Maestros asked the meeting agenda to add an executive session to discuss pending and imminent litigation. Do you have a copy of the meeting agenda? Yes, it's in the record, Your Honor, and unfortunately, it's one of the documents I don't have a ready cite to, but I did review it. It is in the record. I don't have it in front of me. Is that item listed there on the agenda for that meeting date? On March 6th, the agenda is amended to add that item for the March 10th meeting. On March 9th, before the meeting, Maestros does the search using Weaver and Gaydosh. On March 3rd, before he got the charges, there was never any search of Weaver. There was never any look at Marie Weaver for these things. And so I think it's a fair inference that the charges had an impact and led to the second search where she was targeted. If you look at the... Why isn't there a clear, legitimate business justification to terminate somebody who's sending 120 emails to a vexatious litigator? Well, Your Honor, the main fact that a citizen is a vexatious litigator has many disputes with the city. She was also a former council person. To the extent you send... Gaydosh or whomever? What? This Gaydosh or whoever it is. Your client's disclosing emails and confidential documents to somebody who is not a friend of the city's. 120 emails. Is that right? Well, Your Honor, when you say confidential documents, virtually all of the documents were not confidential. Okay. I'm asking. So she just can send out whatever she wants to? Well, technically, if she failed in any respect, Your Honor, she should have added more to the log of public records requests because that was part of her job. Any citizen... In fact, some of the records that were claimed to be confidential, Mr. Maestros himself offered to produce two citizens who asked for them, such as Mark Deshern, and that's in the record with respect to legal fees and legal bills. But look at her rating. It's docket number 41-11. It's an exhibit. Her performance rating there, it's not circle something. It's you go through and you rate each little subpart, and then you come up with an overall rating for the factor. It was fairly detailed, but it was to give Maria, and it repeatedly said, it's going to take you 18 months to fully learn this job. Let me ask you another law question. Let's assume that we agree that you've established a prima facie case. All these things bring you to the prima facie case. I think you would agree that they have offered a legitimate business reason. Yes, which they shifted on. And the question for me is how you would show pretext. And under the law, you would need to show that there's no basis in fact for the reason they claim to have fired her.  Give me your best argument on what establishes pretext. Pretext here is established that it's clear that prior to receipt of her charge, nothing had happened that caused them to say, we're going to consider terminating you. So I think what happened in terms of the conduct within the city is they went looking for something to terminate her for once they got the charges. And then they built that. They began the search of the emails, didn't they, on March 3rd before? They received the retaliation charge. I remember on March 3rd, the only thing emails were searched for was Gaydosh, not Weaver. And Gaydosh was a citizen that they were already in litigation with, that they had already had a lawsuit with, that they were in conflict with. And they were looking for all of Ms. Gaydosh's contacts with the city. It wasn't until March 9th that they searched for Weaver. You don't dispute that the law director was searching because he had been told that documents were being provided? Is there any dispute in the record? Well, I don't think there's any dispute. All he had to do was go to the public records log and could see that Ms. Gaydosh was getting public records and that other citizens were getting public records. The thing is that, in fact, in the performance review that Ms. Weaver had, one of the things they said, you have to do better at maintaining your spreadsheet, the log of what went out with public records. That was one of the things that she had to improve on over the next six months. And so I do not view, I view that as a disputed fact that had to go to a jury and that I think Judge Adams took this away from a jury inappropriately. Thank you, Your Honor. Thank you and the case is submitted.